Lindon L. R. Perrine et al., Defendants in Error, v. Nathan A. Reed et al., Plaintiffs in Error.

1. APPEALS AND ERRORS—*effect of absence of certificate of evidence.* If there is no certificate of evidence in the record of a chancery cause, the Appellate Court can only consider those matters which appear from the pleadings and the orders and the decree.

2. WILLS—*when real estate treated as personal property.* Where a will directs real estate to be sold and the proceeds divided, chancery will apply the doctrine of equitable conversion and treat the gift as one of personal property.

3. WILLS—*how question of vesting of title determined.* In determining the question when an interest in property devised by will vested, the intention of the testator must be ascertained from the whole will.

4. WILLS—*when remainder vests.* Where a will devising real estate creates a life estate therein with remainder over to devisees in the will, the remainder vests in the devisees at once upon the death of the testator. *Held,* in this case, that this rule applied notwithstanding the premises in which the life estate was created were directed to be sold after the death of the life tenant and the proceeds divided.

5. WILLS—*how trusts to be executed.* Where a testator orders his real estate sold without saying who shall sell, a trust is created, and in such a case a court of equity will declare who is the proper party to execute such trust, or if no one is designated it will proceed to execute the trust by its own authority and direct a sale of the land.

6.  ADMINISTRATION OF ESTATES—*what not within power of administrator with will annexed.* Even where a testator by his will appoints an executor and provides that he shall sell real estate and distribute the proceeds, the duties imposed are in the nature of a personal trust or confidence and do not devolve upon an administrator with the will annexed.

Bill to construe will. Error to the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the October term, 1909. Affirmed in part, reversed in part and remanded. Opinion filed April 9, 1910.

W. F. BUNDY, L. H. JONAS, HALEY & HAYNIE and WILLIAM G. MURPHY, for plaintiffs in error.

KAGY & VANDERVORT, CHARLES H. HOLT and NOLEMAN & SMITH, for defendants in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

By this writ of error, it is sought to review a decree of the circuit court of Marion county, construing the will of Charles Perrine, deceased, and ordering the sale of certain real estate of which he died seized, and the distribution of the proceeds thereof. There is no certificate of evidence in the record, filed in this cause and, so far as this court is concerned, only those matters can be considered which appear from the pleadings and the orders and decree entered in the cause by the court below.

The bill was filed to the September term, 1907, by Lindon L. R. Perrine and R. M. Perrine, sons, heirs at law and legatees of deceased, and Grant Featherling, administrator *de bonis non* with the will annexed, of his estate, averring that said Charles Perrine departed this life testate, November 6, 1882, and that his will, in addition to disposing of his personal property, contained the following provision:

"I devise to my wife, Lucinda A. Perrine, to be held by her during her life, 99½ acres of land situated in section 20 and 10, in the county of Marion, State of

Illinois, being the same premises now occupied by me. At the death of my wife I direct that within such time as the proper court may determine and order, the real estate so devised shall be sold on the best possible terms, and that out of the proceeds after paying my funeral expenses and all just debts, the sum of $1,000 shall be paid to my daughter, M. Julia Perrine; that the sum of $1,000 shall be paid my daughter, Myrtilla Perrine; that the sum of $1,000 shall be paid my daughter M. K. Perrine; that the sum of $1,000 be paid to my son, Lindon L. R. Perrine.

"If, after paying the above sums, there shall remain a surplus, that surplus shall be divided equally between my said daughters, M. Julia, M. Kate and Myrtilla, and my son Lindon L. R. Perrine, Flora Perrine and Emma Perrine, daughters of my deceased son, David Perrine, a like sum between the two. My son, Richard M. Perrine, shall have a like sum, out of which must be deducted a note I hold against him for the sum of $150, bearing date November 1, 1871, with interest from date at 6 per cent, the seeming distinction I have made between the first named and last named children arises from the fact that I have made large advancements to my sons, David and Richard.

"It is my will and I also direct that if my said daughters, or either of them, or my son Lindon, shall die before the decease of my wife unmarried or if married shall die without issue, then the amount directed to be paid to my said son and daughter or daughters shall be divided equally between the survivors and paid to them; the above clause refers only to my daughters, Julia, Kate, Myrtilla and my son, Lindon."

That said deceased left surviving him his widow, Lucinda A. Perrine, and his children, Lindon L. R. Perrine, R. M. Perrine, M. Julia Perrine, Myrtilla Perrine and M. Kate Reed, also two grandchildren, Flora A. Stevenson and Emma Stevenson, children and only heirs at law of David W. Perrine, a deceased son of said Charles Perrine, as his only heirs at law and legatees in his will; that said Charles Perrine died seized of the real estate named in the will; that shortly after

his death the will was proven and his widow appointed administratrix with the will annexed, no executor or trustee having been appointed by the will; Lucinda A. Perrine, the widow, died March 11, 1898, leaving all of said children and grandchildren above mentioned, as heirs and legatees of said Charles Perrine, surviving her, except Myrtilla, who died prior to the death of her mother, unmarried and without issue; that M. Kate Reed (formerly Perrine) survived her mother, but died soon afterwards without issue, leaving surviving her, her husband, Nathan A. Reed, one of the plaintiffs in error; that on January 29, 1907, Grant Featherling was appointed administrator *de bonis non* with the will annexed of the estate of Charles Perrine, de-ceased, filed his bond and assumed the duties of his office; that all the debts of said estate had been paid and the provisions of the will performed, except that the real estate had not been sold and the proceeds dis-tributed.

The prayer of the bill was that the interests of the parties to the bill in said real estate, be decreed to be interests in personal property; that a trustee be appointed to sell and convey the real estate and convert it into personal property; that it be decreed that the rights and interests of Myrtilla Perrine and M. Kate Reed under said will, had never vested and that under the terms and conditions thereof, should be paid and vested in M. Julia Perrine and Lindon L. R. Perrine; that the proceeds of said sale after the payment of costs, be distributed to the several parties entitled thereto, according to their rights and interests to be ascertained and decreed by the court.

At the January term, 1908, of said court, an amended bill was filed, substantially the same as the original bill, but further averring that Nathan A. Reed was a person of unsound mind and asking that a guardian *ad litem* be appointed for him; and the name of Grant Featherling, administrator *de bonis non*, was omitted from the complainants and he was made a defendant.

M. Julia Perrine filed an answer and a cross bill, admitting the main averments of the bill but averring the execution of a quit claim deed on May 24, 1890, by M. Kate Reed, conveying to her all of Mrs. Reed's interest in said real estate.

It may be here said that the court below found against this claim of M. Julia Perrine to the ownership of the interest of her sister, Mrs. Reed, and as no cross errors have been assigned, it is unnecessary to mention it further. W. C. Murphy was appointed guardian *ad litem* for Nathan A. Reed and filed an answer for him, claiming his deceased wife's interest in the premises. Flora A. Stevenson and Emma Stevenson answered the original bill, admitting the material averments of the same and filed a cross bill asking for an accounting of rents and profits and that the court construe the will so as to determine who were the "survivors" of said Myrtilla Perrine and said M. Kate Reed, and to determine the rights of such survivors under the will.

At the January term, 1908, A. D. Rodenberg was appointed trustee to sell the premises. On March 2, 1909, the trustee Rodenberg filed a report showing that on August 3, 1908, he had sold the premises for the sum of $7,030, and his report was approved by the court and the trustee ordered to bring the proceeds of sale into court to be distributed under its decree. Later, Grant Featherling, administrator, etc., filed a petition, asking that the funds derived from the sale of said real estate be turned over to him by the trustee for distribution, which was denied. At the January term, 1909, a hearing was had and a general decree entered in the cause. The facts out of which the suit grew were found generally by the decree, as stated in the original and amended bill. The court further found, that M. Kate Reed, M. Julia Perrine and Lindon L. R. Perrine were the sole survivors of Myrtilla Perrine, and said M. Julia Perrine and Lindon L. R. Perrine were the sole survivors of M. Kate Reed, as

mentioned in the special bequest of $1,000 each to said four persons in said will and declared that the two survivors, M. Julia Perrine and Lindon L. R. Perrine were entitled to the whole of said special bequest of $4,000; that it was the intention of the testator the estate should not vest until the land was sold and converted into money and that such estate did not vest until August 3, 1908, when the property was sold; that the rest of the proceeds of the sale after the payment of said special legacy of $4,000 belonged to and should be distributed as follows: To Lindon L. R. Perrine, Richard M. Perrine and M. Julia Perrine, each one-fourth, and to Flora A. Stevenson and Emma Stevenson, each one-eighth; that Nathan A. Reed had no interest in said estate or any part thereof and that Grant Featherling, administrator, etc., was not entitled to the control or custody of said funds or any part thereof. There were also certain findings concerning a note of Richard M. Perrine, the payment of rents and profits and other matters not questioned or necessary to discuss upon this hearing.

The court decreed in accordance with the findings above mentioned and the defendants, Nathan A. Reed, Grant Featherling, administrator, etc., Flora A. Stevenson and Emma Stevenson, excepted to the decree and prayed an appeal to this court. They, however, never perfected the appeal but afterwards brought the case here by writ of error.

Plaintiff in error, Nathan A. Reed, claims that the interest of his wife, M. Kate Reed, in said premises, vested either at the death of her father or at the latest at the death of her mother, in either of which events he would be entitled to her interest as surviving husband, she having had no issue. Plaintiffs in error, Flora A. Stevenson and Emma Stevenson, assert that the court below erred in decreeing that the real estate and the proceeds thereof mentioned in the will did not vest in the several beneficiaries immediately upon the death of Charles Perrine and in holding they did not

vest until the premises were sold and converted into money; and also erred in decreeing that the special legacy of $1,000 to Myrtilla Perrine did not vest in her at the time of the death of her father and thereby descend to her heirs at law.

The first question to be determined is, whether or not the real estate, which was directed to be sold and the proceeds divided among the beneficiaries as stated in the will, should in construing the will, be treated as real or personal property.

In the case of Lash v. Lash, 209 Ill. 595, the testator devised to his wife certain lands "to have and to hold, together with the rents and profits thereof, during her natural life, and at her death the above described lands shall be sold and the proceeds thereof shall be divided as follows, between my heirs, to wit: To my daughter, Eliza Jane Lash, I give the sum of $1,000, to my son James A. Lash I give the sum of $1,000. The balance of the proceeds of the sale of the foregoing described land, shall be divided equally between my six children."

It is to be observed that the terms of the will in the case above cited, are very similar to those in the case before us. In that case the court held: "The express direction of the testator that the lands should be sold after the death of his wife and the proceeds of such sale divided among appellant and other of the children of the testator, not in the proportions in which they would inherit under the statute of descent, but in amounts or in proportions as fixed upon by himself and specified in the will, effected an equitable conversion of the land into money, and the bequests of the proceeds of the sale to the appellant and other legatees are to be regarded by the courts as bequests of personal property and not as devises of interests in the land. Baker v. Copenbarger, 15 Ill. 103; Crerar v. Williams, 145 id. 625; In re matter of Corrington, 124 id. 363; Dorsey v. Dodson, 203 id. 32."

And it was also held that the conversion of the land

into money was to be considered as having been effected at the time of the testator's death; although the sale of the land was to be postponed until after the death of the life tenant. The above case and those referred to in it, state the well known general rule, that where a will directs real estate to be sold and the proceeds divided, equity will apply the doctrine of equitable conversion and treat the gift as one of personal property. Applying that rule to this case, Nathan A. Reed would, under our statute of descent, be entitled to all of his wife's share in said property, if it was vested in her at the time of her death.

In determining the question when an interest in property devised by will vests, the intention of the testator must be ascertained from the whole will. Eldred v. Meek, 183 Ill. 26; Brechbeller v. Wilson, 228 id. 502.

It is claimed in the brief of plaintiffs in error that the estate in this case became vested in the beneficiaries at the death of the testator, or if not then, upon the death of his widow. It cannot be questioned that it is a general rule that where a will devising real estate, creates a life estate therein with remainder over to devisees in the will, the remainder vests in the devisees at once upon the death of the testator. 4 Kent's Com. 202. But the question is, does that rule apply to this case where the premises were directed to be sold after the death of the wife and the proceeds divided.

A case bearing somewhat upon the one before us, upon the question under consideration, is that of Strode v. McCormick, 158 Ill. 142. That case involved a trust deed containing provisions that certain real estate should go to trustees for the benefit of the grantor's wife during her lifetime, with directions for said trustees at her death to sell and dispose of the same and divide the proceeds equally among the children of the grantor and his said wife. The two then had six living children, but when the time arrived for

the sale and distribution only three children survived, and it was said by the court, "these three children, and they only, were within the description of those among whom the division was to be made. No one other than a person who could, at the time of the death of Mary B. Strode, predicate of himself or herself that he or she was one of the children of James M. Strode and issue of his marriage with Mary B. Strode could rightfully claim anything under and by virtue of the deed." And it was later said in speaking of one of the children who died prior to the death of his mother, "If he had survived the event of his mother's death, then his right to share in the division of the proceeds of the lot would have vested and taken effect both in interest and in possession; but as that contingency did not happen, his contingent remainder was defeated by his dying seven years prior to the death of his mother;" and it was held, that the heirs and devisees of the deceased son, could have no right or interest either in the lot in question or the proceeds to be derived from its sale.

On the other hand defendants in error cite several authorities to sustain their position that the estate did not vest until the period of distribution arrived. In one of these cases, Starr v. Willoughby, 218 Ill. 485, the will provided that as soon as practicable after the death of the testator, all real estate owned by him and not mentioned in certain other clauses of his will, should be sold and the proceeds, after deducting an amount sufficient to purchase a home for his widow, should be divided "among such of my children as may be living at that time." It was held by the court that the words quoted referred to the time of distribution and that the children took no vested interest before that time. The language of the will however in that case, plainly referred to the time of distribution. Another case referred to, is that of People v. Jennings, 44 Ill. 488, where a testator provided that his real estate should be sold by his executors as soon after his death

as convenient, and the proceeds thereof, after the payment of debts, etc., should be divided equally among his four children and in case of the death of a child, the children of such deceased child should take the share of their parent. One of the children died before the land was converted into money, leaving a widow and children. It was held that the deceased child of the testator took no vested interest in the parent's estate and therefore his widow had no interest therein, but the same went directly to the said child. This was clearly the correct interpretation of the will, as the instrument itself directed where the property should go. The holding in the case last referred to is approved in Barnes v. Johnston, 233 Ill. 620, also relied upon by defendants in error, but in the last case it is said: "While the law favors the vesting of estates and will fix the time at which they vest at the time of the death of the testator rather than at the period of distribution, when, however, it appears from the entire will that it was not the intention of the testator that the remainder should vest at the time of his death but at the period of distribution, such intention will be carried out by the courts."

We are of opinion from a reading of the whole will, that it was the intention of the testator in this case, that the property in question should vest absolutely in the parties named as his beneficiaries at the time of the death of his wife and not at the time of distribution of the proceeds of sale. It is said in the will "At the death of my wife, I direct that within such time as the proper court may determine and order, the real estate so devised shall be sold on the best possible terms," and provides that out of the proceeds, there shall be paid certain sums to four of his children, etc. He also directs what shall be done with the special legacies to said four children in case either of them should die before the decease of his wife without issue. It is evident that the testator had in his mind that his wife should have the use of the estate during

her lifetime and at her decease the persons named in the will should have the enjoyment of it, but that it should not vest in them until her death. We therefore think the court below erred in decreeing that the estate did not vest until the distribution was made.

The sale of the premises was postponed for more than ten years after the death of the widow and circumstances might have arisen under which it could have been deferred for a longer period, when, possibly, all but one of those named in the will were dead, in which case, under the contention of defendants in error, the one surviving would have taken all the proceeds of sale. Such was plainly not the intention of the testator. From what is above said, it follows that M. Kate Reed had a vested interest in said estate at the time of her death and that her husband, the plaintiff in error, Nathan A. Reed, is entitled to the same and the court below improperly found that he had no interest in said estate or any part thereof.

We cannot assent to the claim of plaintiffs in error, Flora A. Stevenson and Emma Stevenson, that they are entitled to an interest in the $1,000 bequeathed to Myrtilla Perrine, who died before her mother, and this holding is independent of the question whether the general estate vested at the time of the death of Charles Perrine, or not until the death of his wife. The will provided for the payment of a sum of $1,000 each to the three daughters, M. Julia Perrine, Myrtilla Perrine, M. K. (Kate) Perrine and the son, Lindon L. R. Perrine, after the payment of debts and funeral expenses. Later in the will it was provided that if his said daughters or either of them, or his son Lindon, died before the decease of his wife unmarried, or if married, without issue, "then the amount directed to be paid to my said son, and daughter or daughters, shall be divided equally between the survivors and paid to them; the above clause refers only to my daughters Julia, Kate, Myrtilla and my son Lindon." It appears clear to us that the word "survivors" used

in this clause, can refer only to the survivors of the three daughters, who were the only daughters of the testator, and the one son Lindon, and that it was the intention of the testator that should any of the four die before the death of his wife without issue, the share of the one so dying should go to the survivors of the four. Therefore, Myrtilla, having died before the death of her mother, had no such interest in the special bequest of $1,000 as could descend to her heirs at law generally.

The contention of Grant Featherling, as administrator *de bonis non,* that he is entitled to have the fund derived from the sale of the land, turned over to him for distribution, also appears to us to be untenable. Even where a testator by his will appoints an executor and provides that he shall sell real estate and distribute the proceeds, the duties imposed are in the nature of a personal trust or confidence and do not devolve upon an administrator with the will annexed. Nicoll v. Scott, 99 Ill. 529; Bigelow v. Cady, 171 id. 229; Penn v. Fogler, 182 id. 76.

Where a testator orders his real estate sold without saying who should sell, a clear trust is created. A court of equity will not hesitate in such case to declare who is the proper party to execute the trust; or if no one is designated it will proceed to execute the trust by its own authority and decree a sale of the land. 2 Story's Eq. Jur., sec. 1059.

It having become necessary to call upon a court of chancery to appoint a trustee to sell, and as the debts of the estate appear from the pleadings in the case to have been fully paid, there was no reason why any portion of the fund derived from the sale should be paid to the administrator *de bonis non;* but there was every equitable reason why a court of chancery, having once taken jurisdiction of the matter, should complete the business for which the trustee was appointed, by directing him to distribute the fund derived from the sale.

It appears however that said administrator had in his hands the sum of $126.97 he had collected as rents of the premises, which he was ordered by the court to pay to the trustee for distribution. This was error. The trustee had no power to collect rents. All he could do was to sell the land and divide the proceeds. Whether the administrator *de bonis non* had authority to receive the money he did for rents, is immaterial here. He, having in fact received them, must distribute them to the parties entitled to the same.

The decree under consideration is in part affirmed and in part reversed and the cause remanded to the court below with directions to enter a decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part, and remanded with directions.*